1  DAVID R. HABERBUSH (State Bar No. 107190)
   **DAVID HABERBUSH & ASSOCIATES, LLP**
2  444 W. Ocean Blvd., Ste. 1400
   Long Beach, California 90802
3  Telephone:  (5623) 435-3456
   Facsimile:  (562) 435-6335
4

5
   Attorney for GEOFFREY S. PAYNE
6  Debtor and Debtor in Possession

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  In re                              Case No.  10-bk-14626-BR

13  GEOFFREY S. PAYNE                   Chapter  11

14  Debtor.                            **DEBTOR'S CHAPTER 11 PLAN OF**
                                        **REORGANIZATION**
15
                                        Disclosure Statement Hearing
16                                      Date:  June 29, 2010
                                        Time:  10:00
17                                      Place: Courtroom 1668 (16th Floor)

18
                                        Plan Confirmation Hearing
19                                      [See Disclosure Statement for Voting and
                                        Objection Procedures]
20                                      Date:
                                        Time:
21                                      Place:

22

23

24

25

26

27

28

                                        i

# TABLE OF CONTENTS

**Page**

I. DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION ................. 1

    A.     Definitions............................................................................................... 1

    B.     Interpretations, Computation of Time and Governing Law ...................... 11

            1.     Undefined Terms ............................................................................ 11

            2.     Rules of Interpretation ................................................................... 11

            3.     Computing Time Periods ................................................................ 12

            4.     Section Numbers ........................................................................... 13

            5.     Notices and Delivery of Documents............................................... 13

II. INTRODUCTION ........................................................................................... 13

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................. 15

    A.     General Overview........................................................................... 15

    B.     Unclassified Claims ....................................................................... 15

            1. Administrative Expenses ............................................................. 15

            2. Court Approval of Fees Required ................................................ 16

            3. Priority Tax Claims ...................................................................... 17

    C. Classified Claims and Interests........................................................ 18

            1. Classes of Secured Claims.......................................................... 18

            2. Classes of Priority Unsecured Claims ......................................... 25

            3. Classes of General Unsecured Claims......................................... 28

            4. General Unsecured Claims: Classes of Interest Holders..................... 33

    D. Means of Effectuating the Plan ........................................................ 33

            1. Resolution of State Court Actions................................................ 33

            2. Funding for the Plan .................................................................... 34

    E. Post-confirmation Management ........................................................ 36

    F. Disbursing Agent............................................................................. 37

    G. Employment and Compensation of Professionals ............................ 37

    H. Post-Confirmation Estate Claims...................................................... 38

ii

I. Objections to Claims .................................................................................... 39

J. Pending Disputed General Unsecured Claims as of the Date of
   Distribution ........................................................................................... 40

K. Unclaimed Distributions .......................................................................... 40

L. Other Provisions of the Plan.................................................................... 41

   1.Executory Contracts and Unexpired Leases ...................................... 41

      a. Assumptions                                                         41
      b. Rejections....................................................................................... 41

   2. Changes In Rates Subject To Regulatory Commission Approval........ 43

   3. Retention of Jurisdiction ..................................................................... 43

IV.   EFFECT OF CONFIRMATION OF THE PLAN ............................................ 45

A. Discharge.................................................................................................. 45

B. Revesting of Property in the Reorganized Debtor................................... 45

C. Modification of the Plan ........................................................................... 46

D. Post-Confirmation Status Reports .......................................................... 47

E. Post-Confirmation Conversion/Dismissal................................................ 47

F. Final Decree............................................................................................. 48

## I. DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION

**A.**    **Definitions**

1.    "**Administrative Claim**" means a Claim for costs and expenses of the administration of the Case under Sections 503(b) or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Debtor (such as wages, salaries, or commissions for services); (b) all Claims of professionals employed at the expense of the Estate; and (c) any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

2.    "**Allowed Administrative Claim**" means an Administrative Claim allowed pursuant to Sections 503(b) or 507(b) of the Bankruptcy Code.

3.    "**Allowed Amount**" means the amount of any Claim against Debtor determined in accordance with Sections 502 and 506(a) of the Bankruptcy Code and any other applicable Section of the Bankruptcy Code, and recognized by Debtor as value or allowed by Final Order of the Court, except to the extent described or defined otherwise herein.

4.    "**Allowed Claim**" means a Claim: (a) with respect to which a Proof of Claim has not been filed but the Claim has been listed in the Schedules filed with the Bankruptcy Court by Debtor and not listed as disputed, contingent, or unliquidated as to amount and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order; or (b) with respect to which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order.

5.    "**Allowed Class Interest**" means an Allowed Interest in the particular Class described.

6.    "**Allowed General Unsecured Claim**" means an unsecured Allowed Claim against Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, an Allowed Claim based on the rejection of an executory contract or unexpired lease.

7.    "**Allowed Priority Claim**" means an Allowed Administrative Claim, Allowed Priority Tax Claim, or Allowed Priority Unsecured Claim.

8.    "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

9.    "**Allowed Priority Unsecured Claim**" means an Allowed Claim entitled to priority pursuant to Sections 507(a)(3), 507(a)(4), or 507(a)(6) of the Bankruptcy Code.

10.    "**Allowed Secured Claim**" means an Allowed Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

11.    "**Amended Second Home Note**" means the Home Second Note, as amended pursuant to the Plan.

12.    "**Amended Texas Property Note**" means that certain promissory note to be executed by the Reorganized Debtor as maker in favor of the current holder of the Texas Property Note pursuant to the Plan.

13.    "**Approved Date**" means the date on which an Order approving the Disclosure Statement, or an amended version thereof, is entered by the clerk on the Court's docket.

14.    "**Avoidance Action**" means any action that is filed or that may be filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, any actions based on applicable non-Bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any

1  other similar action or proceeding filed to recover property for or on behalf of the Estate

2  or to avoid a lien or transfer.

3       15.  "**Ballot**" means the form distributed to holders of claims and interests on

4  which is to be stated an acceptance or rejection of the Plan.

5       16.   "**Bank**" means Bank of America, the holder of the beneficial interest in the

6  first deed of trust encumbering the Home.

7       17.  "**Bankruptcy Code**" means Title 11 of the United States Code, as now in

8  effect or hereafter amended.  All citations in the Plan to section numbers are to the

9  Bankruptcy Code unless otherwise expressly indicated.

10      18.  "**Bankruptcy Court**" means the United States Bankruptcy Court for the

11  Central District of California, Los Angeles Division, which has jurisdiction over the Case

12  and the Estate of Debtor, or such successor court or tribunal as may hereafter be

13  confirmed or created by lawful authority with power to confirm reorganization plans

14  under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and

15  regulations pertaining thereto.

16      19.  "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure

17  and the Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or

18  hereafter amended.

19      20.  "**Bar Date**" means the last date for filing Proofs of Claim other than

20  Administrative Claims or Claims based upon the rejection of any executory contracts or

21  unexpired leases.  The Bar Date for filing Proofs of Claim has not been set by the

22  Bankruptcy Court.

23      21.  "**Business Day**" means any day other than a Saturday, Sunday, or "legal

24  holiday" (as defined in Bankruptcy Rule 9006(a)).

25      22.  "**Case**" means Debtor's Chapter 11 case that was filed in the Bankruptcy

26  Court, as Case No. 10-bk-14626-BR.

27      23.  "**Cash**" means cash and cash equivalents, including, but not limited to,

28  checks or similar forms of payment or exchange.

1    24.  "**Claim**" means: (a) a right to payment from Debtor, whether or not such

2    right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

3    unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right

4    to an equitable remedy for breach of performance if such breach gives rise to a right to

5    payment from Debtor, whether or not such right to an equitable remedy is reduced to

6    judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

7    undisputed, secured, or unsecured.

8    25.  "**Claimant**" means the holder of a Claim.

9    26.  "**Class**" means a grouping into which Claims or Interests that are

10   substantially similar to other Claims or Interests have been classified pursuant to Article

11   IV of the Plan.

12   27.  "**Class Claim**" means an Allowed Claim in the particular Class described.

13   28.  "**Confirmation**" means the entry of the Confirmation Order by the

14   Bankruptcy Court.

15   29.  "**Confirmation Date**" means the date on which the Confirmation Order is

16   entered by the Bankruptcy Court.

17   30.  "**Confirmation Hearing**" means the hearing, including any continued or

18   postponed session thereof, at which time the Bankruptcy Court will consider and

19   determine whether to confirm the Plan.

20   31.  "**Confirmation Order**" means the order, as entered, of the Bankruptcy

21   Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

22   32.  "**Creditor**" means the holder of an Allowed Claim.

23   33.  "**Debtor**" means **GEOFFREY S. PAYNE,** an individual.

24   **34.**  "**Desert Home**" means the home owned by Debtor commonly described as

25   1 Vista Mirage Way, Rancho Mirage, CA.

26   **35.**  "**Desert Home First Loan**" means that certain loan evidenced by a

27   Promissory Note and secured by a first priority lien secured by the Desert Home, in

28   favor of Chase Bank.

**36.** "**Desert Home Second Loan**" means that certain loan evidenced by a Promissory Note and secured by a second priority lien secured by the Desert Home, in favor of Bank of America.

**37.** "**Desert Home Loan Security Documents**" means all documents creating or evidencing the first and second priority liens secured by the Desert Home, in favor of Chase Bank and Bank of America.

38. "**Disallowed Claim**" means a Claim against Debtor, which Claim is disallowed pursuant to an order of the Bankruptcy Court as to which eleven (11) calendar days have passed following entry of such order and no stay pending an appeal of such order is obtained during such period

39. "**Disbursing Agent**" means the person or entity charged with making Distributions pursuant to the terms of the Plan. Pursuant to the Plan, the Reorganized Debtor will serve as the Disbursing Agent under the Plan.

40. "**Disclosure Statement**" means the Disclosure Statement (and all exhibits or schedules annexed thereto or referenced therein) that accompanies the Plan, as the Disclosure Statement may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

41. "**Disputed Claim**" means any Claim: (a) listed on Debtor's Schedules as unliquidated, disputed, or contingent; or (b) as to which Debtor, or any other party in interest, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or subordination has not been withdrawn or determined by a Final Order. A Claim will be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim.

42. "**Disputed Claims Reserve Account**" means the segregated account to be created for holding the pro-rata share of any Disputed Claims pending final resolution of the Disputed Claim.

43. "**Distribution**" means the Cash that is required to be distributed under the Plan to the holders of Allowed Claims.

44. "**Effective Date**" means the date not later than ninety (90) days following the date upon which the Confirmation Order becomes a Final Order; provided, however, that if an appeal of the Confirmation Order is timely filed Debtor may elect to cause the Plan to become effective notwithstanding the pendency of such appeal, so long as no stay of the Confirmation Order is in effect, by filing with the Bankruptcy Court a notice of such election, in which event the Plan will become effective as provided herein.

45. "**Employment Income**" means the income Debtor would be paid from all employment sources including without limitation from being an attorney and real estate developer.

46. "**Estate**" means the estate created under Section 541 of the Bankruptcy Code in the Case.

47. "**Exhibits**" means those exhibits annexed to the Plan or Disclosure Statement or incorporated by reference in the Plan or Disclosure Statement.

48. "**File**," "**Filed**," or "**Filing**" means filed with the Bankruptcy Court having jurisdiction over the Case.

49. "**Final Distribution**" means, for each Class, the last Distribution to be made to holders of Allowed Claims in that Class.

50. "**Final Order**" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which Debtor is a party, which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceeding for reargument or rehearing shall then be pending; or (b) any right to appeal, petition for *certiorari*, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to Debtor; or (c) any appeal, petition for *certiorari*, reargument or

1   rehearing has been resolved by the highest court to which the order or judgment was

2   appealed timely or from which *certiorari*, reargument, or rehearing was sought.

3       51.   "**Financial Projections**" means the financial statements prepared by Debtor

4   that sets forth, among other things, Debtor's cash flow projections.

5       52.   "**General Unsecured Claim**" means an unsecured Claim against Debtor

6   that is not entitled to priority under Section 507(a) of the Bankruptcy Code, including,

7   without limitation, a Claim based on the rejection of an executory 8790 contract or

8   unexpired lease.

9       53.   "**Geoffrey S. Payne**" means Debtor.

10      54.   "**Home**" means the single family detached home commonly known as 274

11  Argonne Avenue, Long Beach, CA 90803, which is the principal residence of Debtor.

12      **55.   "Home First Loan"** means that certain loan evidenced by a Promissory

13  Note and secured by a first priority lien evidenced by a Deed of Trust secured by the

14  Home, in favor of Bank of America.

15      **56.   "Home Second Loan"** means that certain loan evidenced by a Promissory

16  Note and secured by a second priority lien evidenced by a Deed of Trust secured by the

17  Home, in favor of Cal Cap, Inc.

18      **57.   "Home First Loan Lender"** means Bank of America, which has a first

19  priority lien secured by Debtor's Home.

20      **58.   "Home Second Loan Lender"** means Cal Cap, Inc., which has a second

21  priority lien secured by Debtor's Home.

22      **59.   "Home Second Note"** means that certain Promissory Note secured by a

23  second priority lien secured by the Home, in favor of the Home Second Loan Lender.

24      60.   "**Net Sale Proceeds**" means all of the gross Cash proceeds from the sale of

25  a Property of the Estate minus all costs of sale including, but not limited to, real estate

26  commissions and fees of Professionals hired to sell the Property, title charges, escrow

27  fees, and the fees and expenses of the Disbursing Agent.

28

61.    "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Court's docket.

62.    "**Person**" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code) or official committee appointed by the United States Trustee.

63.    "**Petition Date**" means <u>February 9, 2010</u>, the date on which Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code, commencing the Case.

64.    "**Plan**" means Debtor's Chapter 11 Plan of Reorganization, as the Plan may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

65.    "**Post-Confirmation Estate Claims**" means any and all claims and causes of action that constitute property of the Estate including, but not limited to, any Avoidance Actions, whether or not such claims or causes of action are the subject of litigation pending as of the Effective Date.

66.    "**Post-Petition Earnings**" means any funds received by Debtor since the Petition Date.

67.    "**Priority Claim**" means an Administrative Claim, Priority Tax Claim, or Priority Unsecured Claim.

68.    "**Priority Tax Claim**" means a Claim asserted to have priority under Section 507(a)(8) of the Bankruptcy Code.

69.    "**Priority Unsecured Claim**" means a Claim asserted to have priority under Sections 507(a)(3), 507(a)(4), or 507(a)(6) of the Bankruptcy Code.

70.    "**Professionals**" means professionals, such as attorneys, consultants or accountants employed by the Disbursing Agent in this case after the confirmation of the Plan, including but not limited to, David R. Haberbush of the Law Office of David R. Haberbush.

71.    "**Property**" means any real or personal property of the Estate.

72.    **"Pro Rata"** means the proportional amount of any one Claim or Equity Interest in a Class or a group of Claims to the aggregate amount of all Claims or Equity Interests in the same Class or group, including Disputed Claims until disallowed.

73.    **"Proof of Claim"** means a statement under oath filed in the Case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

74.    **"Qualified Buyer"** means any individual or entity the Reorganized Debtor determines is qualified to purchase the Home or, if applicable, the Project Lots.

75.    **"Reorganized Debtor"** means Debtor, GEOFFREY S. PAYNE, an individual, on and after the Effective Date, the person that shall assume all of the rights and obligations of Debtor together with title to and control of Debtor's assets and liabilities upon Confirmation of the Plan, as such rights, obligations, assets and liabilities are modified in the Plan

76.    **"Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by Debtor in the Case, as amended, modified, or supplemented from time to time.

77.    **"Secured Claim"** means a Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

78.    **"Secured Creditor"** shall mean the holder of an Allowed Secured Claim.

79.    **"Subcontractor Claimants"** shall mean subcontractors and material suppliers that performed services or furnished materials to the Project pre-petition.

80.    **"Tax Collector"** means the Riverside County Treasurer/Tax Collector or its successors-in-interest.

81.    **"Term"** means a period starting on the Effective Date and ending five (5) years thereafter.

82.    **"Texas Lender"** means the first priority secured lender respecting the Texas Property.

83.    **"Texas Property"** means that certain real estate consisting of approximately 23 acres of unimproved and unentitled land located in Austin, Texas.

84.    **"Texas Property Loan"** means that certain loan in the original principal amount of $200,000 evidenced by a Promissory Note and secured by a first priority lien evidenced by a Deed of Trust secured by the Texas Property, in favor of Griesbach Properties, Inc., which current principal balance is $175,000

85.    "**Texas Property Loan Security Documents**" means all documents creating or evidencing a first priority lien secured by the Texas Property, as all such documents may have been amended or modified from time to time.

86.    **"Texas Property Note"** means that certain Promissory Note secured by a first priority lien secured by the Texas Property, in favor of the Texas Lender.

87.    **"Unclaimed Distribution"** means any Distribution that is unclaimed as a result of any of the following: (a) checks that have been returned as undeliverable without a proper forwarding address; (b) checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks that remain un-negotiated for a period of ninety (90) days after the date of issuance.

88.    "**Unclassified Claims**" means the Allowed Amount of all Administrative Claims of Debtor's Case, allowed pursuant to Section 503(b) of the Bankruptcy Code; and (ii) all Priority Tax Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

89.    "**Unsecured Creditors**" means Creditors holding Allowed Unsecured Claims against Debtor for which there are no assets of Debtor serving as a security, but not including Priority Claims.

90.    "**Wage Claimant**" means a Claimant asserting a Claim pursuant to Section 507(a)(3) or (a)(4) of the Bankruptcy Code.

**B.    Interpretations, Computation of Time and Governing Law**

**1.    Undefined Terms**

Any term used in the Disclosure Statement that is not defined in the Disclosure Statement, either in Section II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**2.    Rules of Interpretation**

For the purposes of the Disclosure Statement:

**a.** Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

**b.** Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

**c.** Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

**d.** Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or to the Plan.

**e.** Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

1          **f.**   Captions and headings to Articles and Sections are inserted for convenience

2   of reference only and are not intended to be a part of or to affect the interpretation of the

3   Plan.

4          **g.**   The rules of construction set forth in Bankruptcy Code Section 102 shall

5   apply.

6          **h.**   The provisions of the Plan will control over any description thereof contained

7   in the Disclosure Statement.

8          **i.**   Any term used in the Plan that is not defined in the Plan, but that is used in

9   the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to

10  that term in (and shall be construed in accordance with the rules of construction under)

11  the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules

12  of construction set forth in Section 102 of the Bankruptcy Code shall apply hereto.  The

13  definitions and rules of construction contained herein do not apply to the Disclosure

14  Statement or to the exhibits to the Plan except to the extent expressly so stated in the

15  Disclosure Statement or in each exhibit to the Plan.

16         **j.**   Except to the extent that federal law, including the Bankruptcy Code or the

17  Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall

18  be governed by, and construed and enforced for all purposes in accordance with, the

19  laws of the State of California, without giving effect to any principles of conflict of laws

20  thereof.

21         **k.**   All exhibits to the Plan are incorporated into the Plan and will be deemed to

22  be included in the Plan, regardless of when they are filed.

23         **3.**      **Computing Time Periods**

24         In  computing  any  period  of  time  prescribed   or  allowed  by  the  Plan,  the

25  provisions of Bankruptcy Rule 9006(a) shall apply.

26

27

28

1

    **4.**    **Section Numbers**

2

    References in the Plan and Disclosure Statement to a Code section are

3

references to the United States Bankruptcy Code (Title 11 of the United States Code)

4

except as otherwise indicated.

5

    **5.**    **Notices and Delivery of Documents**

6

    All notices, correspondence, and other deliveries under this Disclosure

7

Statement must be directed as follows:

8

9

10

| To Debtor or Reorganized Debtor: | GEOFFREY S. PAYNE<br>P.O. Box 3443<br>Long Beach, California 90803 |
|---|---|
| With a Copy to: | DAVID R. HABERBUSH (State Bar No. 107190)<br>HABERBUSH & ASSOCIATES, LLP<br>444 W. Ocean Blvd., Ste. 1400<br>Long Beach, California 90802<br>Telephone:  (562) 435-3456<br>Facsimile:  (562) 435-6335 |

11

12

13

14

15

16

## II. **INTRODUCTION**

    GEOFFREY S. PAYNE is Debtor and Debtor in Possession in this Case.  Debtor

17

commenced his Case by filing a voluntary Chapter 11 petition under the United States

18

Bankruptcy Code, ("Code") Sections 101-1330, on <u>February 9, 2010</u> (the "Petition

19

Date").  This document is the Chapter 11 plan proposed by Debtor (Debtor may

20

sometimes be referred to herein as the "Proponent" of the Plan).  Sent to you in the

21

same envelope as this document is the Disclosure Statement that has been approved

22

by the Court and that is provided to help you understand the Plan.

23

    This is a reorganization plan.  In other words, the Plan Proponent (i.e., Debtor)

24

seeks to accomplish payment under the Plan primarily through the cash flow generated

25

from income through his employment as a lawyer and as a real estate developer and

26

through real estate transactions and holdings (held now and in the future).  The Plan

27

provides for Debtor to reorganize by continuing to operate and liquidate by selling

28

assets of the Estate, or a combination of both, which sales mostly serve to reduce

1  Debtor's ongoing expenses rather than allowing Cash coming into the Estate.  Debtor is

2  the party proposing the Plan sent to you in the same envelope the Disclosure

3  Statement.  The secured creditor(s) of the Estate shall be paid as is more particularly

4  described herein.

5      The Distributions under the Plan will be made from available Employment

6  Income, Cash and Net Sale Proceeds.

7      The Plan will be implemented by:

8          •    Debtor reducing his debts.

9          •    Debtor reducing his expenses.

10         •    Debtor selling Estate assets that require costly monthly and

11  periodic payments in order to reduce periodic expenses.

12         •    The restructuring of the Home Second Note as follows: Debtor

13  asserts that the Home Second Note is subject to usury laws, which a lawsuit for such

14  against the Home Second Loan Lender would reduce the outstanding principal balance

15  from $850,000 to $498,572.  Further, if Debtor is successful in his action, no interest

16  would be payable under the Home Second Loan.  The existing interest payable under

17  the Home Second Note is 14% and the loan is past due.  Debtor proposes to pay the

18  Home Second Loan Lender as is more particularly described below and in the

19  Disclosure Statement.

20         •    Debtor intends to abandon the Desert Home from the Estate and

21  allow a sale to be completed outside of the Estate since the secured debts greatly

22  exceed the value of the Desert Home.  No proceeds of any kind or nature are being

23  paid to Debtor under the proposed sale.

24         •    Debtor is in a marital dissolution action (the "Divorce") pending in

25  the Los Angeles Superior Court, Case No. BD462739.  Under the Divorce, Debtor is

26  under a Court order requiring him to pay monthly support payments to his ex-wife in the

27  amount of $4,174, plus other costs including automobile and health insurance premiums

28  in favor of his ex-wife, which Debtor will continue to pay through the Term.

1      •      Debtor proposes to solicit offers to purchase his various interests in

2  partnerships and entities.

3      •      Remaining funds, if any, shall be paid to the any Claims other than

4  the Home First Loan Lender and the Tax Collector of their Allowed Secured Claims.

5  There are no other Secured Claims of the Estate.

6                                    III.

7      **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

8  **A.      General Overview**

9      As required by the Bankruptcy Code, the Plan classifies Claims and Interests in

10  various classes according to their right to priority of payments as provided under the

11  Bankruptcy Code.  The Plan states whether each class of Claim or Interest is impaired

12  or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

13  **B.      Unclassified Claims**

14      Certain types of Claims are not placed into voting classes; instead they are

15  unclassified.   They are not considered impaired and they do not vote on the Plan

16  because they are automatically entitled to specific treatment provided for them in the

17  Bankruptcy Code.  As such, Proponent has <u>not</u> placed the following Claims in a class.

18      **1.      Administrative Expenses**

19      Administrative expenses are Claims for costs or expenses of administering

20  Debtor's Chapter 11 case that are allowed under Code Section 507(a)(1).  The Code

21  requires that all Administrative Claims be paid on the Effective Date of the Plan, unless

22  a particular claimant agrees to a different treatment.

23      Except to the extent that the holder of a particular Allowed Administrative Claim

24  agrees to a different treatment thereof, each Allowed Administrative Claim will be paid in

25  full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth (5th) Business Day

26  after the order allowing such Administrative Claim becomes a Final Order.  Any holder

27  of an Administrative Claim (including, without limitation, any governmental unit holding

28  an Administrative Claim for post-petition taxes and/or interest and penalties related to

Case 2:10-bk-14626-BR    Doc 45    Filed 06/07/10    Entered 06/07/10 17:30:50    Desc
Main Document        Page 19 of 52

1 such taxes) is required to file a request for payment of its Administrative Claim.

2 Requests for payment of Administrative Claims must be filed not later than thirty (30)

3 days after the Effective Date, and will be paid on or before the fifth (5th) Business Day

4 after the order allowing such Administrative Claim becomes a Final Order.  Any failure

5 by the holder of an Administrative Claim to file a request for payment of its

6 Administrative Claim within thirty (30) days after the Effective Date will forever bar such

7 holder of an Administrative Claim from asserting its Administrative Claim against the

8 Estate.

9          The following chart lists all of Debtor's Section 507(a)(1) Administrative Claims

10 and their treatment under the Plan:[1]

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Haberbush & Associates, LLP | $0.00 | Paid in full on Effective Date |
| Clerk's Office Fees | $250  Estimated | Paid in full on Effective Date |
| U.S. Trustee Fees | $650 (2nd quarter 2010) | Paid in full on Effective Date |
|  | TOTAL $900 |  |

20          **2.     Court Approval of Fees Required**

21          The Court must rule on all professional fees listed in the chart above before the

22 fees will be owed.  For all fees except the Clerk's Office fee and the United States

23 Trustee's fees, the professional in question must file and serve a properly noticed fee

24 application and the Court must rule on the application.  Only the amount of fees allowed

25 by the Court will be owed and required to be paid under the Plan.

---

[1] The amounts listed owed are estimates.

16

### 3.    **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).   Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive the present value of such Allowed Priority Tax Claim in deferred Cash payments over a period not exceeding six (6) years from the date of assessment of such tax.

Treatment of Allowed Priority Tax Claims.   Debtor's Plan provides that deferred Cash payments will be paid in equal quarterly installments of principal and interest and will be in an amount sufficient to amortize each Allowed Priority Tax Claim fully over the Term, a period of five (5) years from the Effective Date.   The outstanding and principal amount of each Allowed Priority Tax Claim will bear interest, commencing on the Effective Date and continuing until such Allowed Priority Tax Claim is paid in full, at the lesser of: (i) the rate of three percent (3%) per annum; or (ii) the rate specified by Section 6621(a) of the Internal Revenue Code, as such rate is adjusted from time to time.   Payments to holders of Allowed Priority Tax Claims will commence on the first quarter anniversary of the Effective Date and will continue on each quarter following the Effective Date.

The Reorganized Debtor will have the right to pay all Allowed Priority Tax Claims, or any remaining balance of such Claim, in full, at any time on or after the Effective Date, without premium or penalty. The following chart lists all of Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan.[2]  Debtor disputes he owes any amounts for the Fiscal Tax Year 2009 (as claimed by the Internal Revenue Service under its Claim submitted in this action) and asserts he will be owed a rebate. The IRS has filed a claim of $31,480.05 for the Fiscal Tax Year 2009.

---

[2] In the event any taxing agencies filed Priority Tax Claims, Debtor reserves the right to file an objection to such Claims on any appropriate grounds.

17

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Internal Revenue Service 2007 and 2008 | $4,767.89 | Payable in equal monthly equal installments amortized over five (5) years |
| Franchise Tax Board (Est.) | $2,000.00 | Payable in equal monthly equal installments amortized over five (5) years |
| | TOTAL $6,767.89 | |

**C.    Classified Claims and Interests**

    **1.    Classes of Secured Claims**

      Secured Claims are Claims secured by liens on Property of the Estate.  The following chart lists the first class of Debtor's pre-petition Secured Claims and their treatment under the Plan:[3]

| Class# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
| 1 | Secured claim of:<br>• Name = County Tax Collectors<br>• Collateral Description = Property Tax Lien Desert Home<br>• Pre-pet. arrearage amount = -0-<br>• Post-pet. arrearage amount = $3,332.18<br>• Total claim amount – <br><br>$3,003.83<br><br>Total Penalties Claimed $328.35 | N | Impaired, Claims in this class are entitled to vote on the plan. | • Pymt interval = With sale of Desert Home<br>• Est. pymt amt/interval = 100%<br>• Balloon Payment = 100%<br>• Begin date = Confirmation Date<br>• End date = Applicable Sale Date<br>• Interest rate %= 5.0%<br>• Total payout  = 100%<br><br>Amount will be paid with the sale of the Desert Home, as applicable, or paid on the outside date of the 30th month after Plan Confirmation at which time the Claimant would be paid in full.<br><br>Treatment of the lien = Lien is retained and in full force and effect. |

---

[3]    The amounts listed owing is the amount listed owing on Debtor's Schedules.  Debtor has not reviewed the proofs of claim, if any, filed by the following Creditors.  Debtor reserves its right to object to any of the Claims filed by the Creditors listed on any reasonable grounds.

1    Debtor reserves the right to appeal the assessed values of the Desert Home and

2    the Home, which Debtor believes and asserts that the assessed values are presently

3    over-valued by the respective County Tax Assessor.

4

5

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of: <br>· Name = Bank of America <br>· Collateral description = 1st Trust Deed on 274 Argonne Ave., Long Beach, CA (APN 7250-033-001) <br>· Collateral value =more than $1,950,000 <br>· Priority of security int. = 1st <br>· Principal owed = $1,950,000 <br>· Pre-pet. arrearage amount = $-0- (included above) <br>· Post-pet. arrearage amount = $-0-) <br>· Total claim amount = $1,950,000 | N | Unimpaired, Claims in this class are entitled to vote on the Plan. | · Pymt interval = As scheduled under Bank of America Loan Documents <br>· Est. pymt amt/interval = As scheduled <br>· Balloon pymt = not applicble <br>· Begin date = Ongoing <br>· End date = Per loan <br>· Interest rate % = Existing loan Interest Rate <br>· Total payout % = Per loan <br><br>· Treatment of lien = Lien is retained and in full force and effect, subject to Plan changes, if any. |

Comments:

Class 2 consists of the Allowed Secured Claim of Home First Loan Lender or the

holder of the Home First Loan.  Class 2 is not impaired under the Plan.  Debtor will

continue paying the Secured Home First Loan payments as and when due including the

impound amount reimbursing the Home First Loan Lender for the April 2009 tax

payment, which this Lender advanced and which payment it is charging Debtor a

monthly charge to reimburse this Lender for the advance.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of:<br>· Name = Cal Cap, Inc.<br>· Collateral description = 2nd Trust Deed on 274 Argonne Ave., Long Beach, CA (APN 7250-033-001)<br>· Collateral value = less than $850,000<br>· Priority of security int. = 2nd<br>· Principal owed = $850,000 (disputed)<br>· Pre-pet. arrearage amount = $850,000 (included above)<br>· Post-pet. arrearage amount = None ($0.0)<br>· Total claim amount = $850,000 (disputed) | N (Disputed) | Impaired, Claims in this class are entitled to vote on the Plan. | · Pymt interval = Per Plan, No interest for first year and interest at 5% per annum in years two through five; principal due by end of year 5.<br>· Est. pymt amt/interval = Per Plan or from Sale of Home<br>· Balloon pymt = By end of Year 5<br>· Begin date = Ongoing<br>· End date = Upon payment in full<br>· Interest rate % = Five Percent (5%) per year.<br>· Total payout % = $700,000 plus interest.<br><br>· Treatment of lien = Lien is retained and in full force and effect, subject to Plan changes. |

Comments:

Class 3 consists of the Allowed Secured Claim of Home Second Loan Lender or the holder of the Home Second Loan.  Class 3 is impaired under the Plan.  The original note interest rate is usurious and there are other problems.  Accordingly, Debtor has claims against the Home Second Loan Lender under a usury action, which Debtor believes and alleges would reduce the amount due under the Second Home Loan from $850,000, not including interest and charges thereon, to $498,572.  Debtor proposes that rather than commencing an action for usury against the Home Second Loan Lender, that Debtor will settle and resolve the disputes between the Home Second Loan Lender and Debtor by Debtor agreeing to pay the Home Second Loan Lender the amount of $700,000 with interest accruing at the rate of five percent (5%) per annum.  Further, no interest will be due or payable during the first year after the Effective Date.  Commencing one (1) year after the Effective Date, interest payments will be due and payable by the Reorganized Debtor to the Home Second Loan Lender as follows: starting one (1) month after the one year anniversary following the Effective Date, the Reorganized Debtor will pay the Home Second Loan Lender the outstanding interest then due by the first day of each consecutive month on the then-outstanding principal balance of the Home Second Loan.  The Home Second Loan principal balance and all

1   then-outstanding interest will be due and payable on the earlier of the sale of the

2   Property from the Net Sale Proceeds or at the end of the Term, which is five (5) years

3   after the Effective Date.  Debtor reserves the right to pay the Home Second Loan

4   Lender funds from other sources or pay the Home Second Loan Lender greater

5   amounts to pay the Home Second Loan Lender sooner than proposed under this Plan.

6          To effect the proposal set forth above, as of the Confirmation Date the Home

7   Second Loan Lender Note shall be deemed satisfied and paid in full.  Within ten (10)

8   business days after the Confirmation Date (but coterminous with the execution and

9   delivery of the Amended Home Second Note as described below), Home Second Loan

10  Lender or the holder of the Home Second Loan Lender Note shall return to the

11  Reorganized Debtor the Home Second Loan Lender Note marked "Paid in Full."

12  Within twenty (20) business days after the Confirmation Date (but coterminous with the

13  cancellation and return of the Home Second Note), the Reorganized Debtor shall

14  execute the Amended Home Second Note and deliver it to the Home Second Loan

15  Lender.

16         The Amended Home Second Note and Amended Home Second Security

17  Documents shall be in the same form as the Home Second Loan Lender Note and

18  Home Second Loan Lender Security Documents, respectively, with the exception of the

19  following:

20         The Amended Home Second Note and the Amended Home Second Security

21  Documents shall eliminate any provision contained in the Home Second Loan Lender

22  Note and the Home Second Loan Lender Security Documents that:

23         (1)     Shows a principal balance of $850,000.

24         (2)     Requires monthly or other periodic payments except as provided under

25  the Plan; and

26         (3)     Requires payments toward real property taxes of the Project except as

27  provided under the Plan.

28         The Amended Home Second Note shall be in the form attached to the

21

1  Disclosure Statement as "**Exhibit A**," which shall be incorporated herein in its entirety.

2  In the event there is any provision of the Amended Home Second Note that is

3  inconsistent with the terms of the Plan, the terms of the Plan shall control.

4  The Amended Home Second Security Documents shall continue to secure an

5  encumbrance on the Home with the same priority and validity that existed before

6  Debtor's alleged pre-petition default(s).  The Amended Home Second Security

7  Documents shall secure repayment of the Amended Home Second Note.  Since the

8  Home Second Loan Lender Note has been paid in full pursuant to the Plan, any event

9  of default that may have existed pre-petition under the Home Second Loan Lender Note

10  and/or the Home Second Loan Lender Security Documents shall be deemed cured and

11  any notice of default and/or sale recorded pre-or post-petition shall be deemed null and

12  void and of no further force or effect, and the Home Second Loan Lender or the holder

13  of the Home Second Loan Lender Note shall execute any documents or instruments

14  necessary to reflect the same, including the execution and recordation of a rescission of

15  notice of default and/or sale.

16  The Reorganized Debtor reserves the right to pay the Home Second Loan

17  Lender funds from other sources or pay the Home Second Loan Lender amounts to pay

18  the Home Second Loan Lender sooner than proposed under this Plan.

19  Upon payment in full of the Amended Home Second Note, it shall be deemed

20  satisfied and canceled and the encumbrance evidenced by the Amended Home Second

21  Security Documents shall be deemed satisfied and the Home Second Loan Lender shall

22  reasonably cooperate to cause the encumbrance to be released.

23  The Reorganized Debtor shall have the right to voluntarily transfer title to the

24  Home to any third party related to Debtor or in connection with the Divorce after the

25  Confirmation Date, and this transfer shall not confer upon the Class 3 Claimant the right

26  to accelerate the payment of the Claim, or to change, alter or amend the treatment

27  thereof as provided in the Plan.

28  In the event that the Reorganized Debtor defaults in its obligation to pay each

22

1  payment due and payable under the Amended Home Second Note and the Amended

2  Home Second Security Documents, the holder of the Amended Home Second Note

3  shall be entitled to record a notice of default and accelerate the entire unpaid

4  indebtedness and/or exercise such other remedies as provided under the Amended

5  Home Second Note and the Amended Home Second Security Documents or under

6  applicable California law.  The Reorganized Debtor shall be entitled to cure and

7  reinstate any such default under applicable California law.

8       Nothing in the Plan shall enhance or otherwise increase the rights of the holder

9  of the Class 3 Claim to seek recovery on its claims as against any party other than the

10  Reorganized Debtor.

11

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of:<br>· Name = Griesbach Properties, Inc.<br>· Collateral description = 1st Trust Deed secured by Texas Property [Ref ID 02103101380000 and 0001]<br>· Collateral value = $175,000<br>· Priority of security int. = 1st<br>· Principal owed = $175,000<br>· Pre-pet. arrearage amount = $-0- (included above)<br>· Post-pet. arrearage amount = $175,000<br>· Total claim amount = $175,000 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the Plan. | · Pymt interval = Per Plan, which extends the due date by five (5) years.<br>· Est. pymt amt/interval = Monthly<br>· Balloon pymt = Five (5) years<br>· Begin date = Ongoing<br>· End date = Upon payment in full<br>· Interest rate % = Existing Note Interest Rate<br>· Total payout % = $175,000 plus interest<br><br>· Treatment of lien = Lien is retained and in full force and effect, subject to Plan changes, if any. |

Comments:

     Class 4 consists of the Allowed Secured Claim of the Texas Lender or the holder

of the Texas Property Loan.  Class 4 is impaired under the Plan.  The original note

("Real Estate Lien Note" dated April 21, 2005) due date is past, which was June 1,

2010.  Accordingly, Debtor only desires and proposes to extend the due date by five (5)

years from the original due date, to June 1, 2015.  The Texas Property Note requires

that Debtor reduce the principal balance of the Note by $5,000 every year, which Debtor

has done.  Debtor proposes to continue reducing the principal balance by $5,000 per

year by April 21 of each year, the first such reduction that would be due on or before

1   April 21, 2011.   The existing interest rate under the Loan, 7.5%, will remain in effect

2   through the remaining term of the Texas Property Loan.  To effect this proposal, as of

3   the Confirmation Date, the Texas Property Note shall be modified to reflect only a

4   change in the due date.  Within ten (10) business days after the Confirmation Date, the

5   Texas Lender or the holder of the Texas Property Note shall return to the Reorganized

6   Debtor the proposed amendment to the Texas Property Note evidencing its agreement

7   to extend the term of the Texas Property Note as provided herein.  The Amended Texas

8   Property Note shall be in the same form as the Texas Property Note, respectively, with

9   the exception of the change of the Due Date.  In the event there is any provision of the

10   Amended Texas Property Note that is inconsistent with the terms of the Plan, the terms

11   of the Plan shall control.

12        The Amended Texas Property Loan Security Documents shall continue to secure

13   an encumbrance on the Texas Property with the same priority and validity that existed

14   before Debtor's alleged pre-petition default(s).  The Texas Property Note shall be

15   deemed cured and any notice of default and/or sale recorded pre-or post-petition shall

16   be deemed null and void and of no further force or effect, and the Texas Lender or the

17   holder of the Texas Property Loan shall execute any documents or instruments

18   necessary to reflect the same, including the execution and recordation of a rescission of

19   notice of default and/or sale.

20        Payments on the Amended Texas Property Note shall be made as follows:  the

21   Reorganized Debtor will continue to pay consecutive monthly interest only payments on

22   the then-outstanding principal balance of the Texas Property Loan.  The then-

23   outstanding principal balance of the Texas Property Loan shall be payable either on or

24   before the expiration date of the Note as provided under this Plan or, if an earlier sale of

25   the Texas Property occurs, through the Net Sale Proceeds of the Texas Property.  The

26   Reorganized Debtor reserves the right to pay the Texas Lender funds from other

27   sources or pay the Texas Lender amounts to pay the Texas Lender sooner than

28   proposed under this Plan.

1    Upon payment in full of the Amended Texas Property Note, the Note shall be

2  deemed satisfied and canceled and the encumbrance evidenced by the Texas Property

3  Loan Security Documents shall be deemed satisfied and the Texas Lender shall

4  reasonably cooperate to cause the encumbrance to be released.

5    The Reorganized Debtor shall have the right to voluntarily transfer title to the

6  Texas Property to any third party related to Debtor after the Confirmation Date, and this

7  transfer shall not confer upon the Class 4 Claimant the right to accelerate the payment

8  of the Claim, or to change, alter or amend the treatment thereof as provided in the Plan.

9    In the event that the Reorganized Debtor defaults in his obligation to pay each

10  payment due and payable under the Amended Texas Property Note and the Texas

11  Property Loan Security Documents, the holder of the Amended Texas Property Note

12  shall be entitled to record a notice of default and accelerate the entire unpaid

13  indebtedness and/or exercise such other remedies as provided under the Amended

14  Texas Property Note and the Texas Property Loan Security Documents or under

15  applicable Texas law.  The Reorganized Debtor shall be entitled to cure and reinstate

16  any such default under applicable Texas law.

17    Nothing in the Plan shall enhance or otherwise increase the rights of the holder

18  of the Class 4 Claim to seek recovery on its claims as against any party other than the

19  Reorganized Debtor.

20

21    **2. Classes of Priority Unsecured Claims**

22    A.    Certain priority claims that are referred to in Code Sections 507(a)(3), (4),

23  (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled

24  to priority treatment as follows: the Code requires that each holder of such a Claim

25  receive cash on the Effective Date equal to the allowed amount of such Claim.

26  However, a Class of unsecured priority claim holders may vote to accept deferred cash

27  payments of a value, as of the Effective Date, equal to the allowed amount of such

28

1   Claim.  Debtor has no Claims of the type identified in Code Sections 507(a)(3), (4), (5),

2   (6), and (7).

3        Debtor has no Priority Unsecured Claim under Code Sections 507(a)(3), (4), (5),

4   (6), and (7).

5     B.     Debtor has three (3) Priority Unsecured Claim under Code Section

6   507(a)(1)(A), that of his ex-wife Nicole M. Street, who is entitled to support under an

7   order by the Los Angeles Superior Court in the Divorce in the amount of $4,174 per

8   month payable in two equal installments not later than the 15th and the 30th of each

9   consecutive month, and her attorneys.  Debtor will continue paying this obligation.

10      Nicole M. Street's family law attorneys, Brandmeyer, Stanton & Dockstader and

11   the Law Offices of Martha Iturrioz allege and thereon claim that Debtor owes them

12   $20,000 and $10,000, respectively, for services they provided to Nicole M. Street.  No

13   such award or order has been made in the Divorce action.  These Claims are disputed.

14

| CLASS# | DESCRIPTION | INSIDERS (Y/N) DISPUTED (D) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5a | Unsecured claim of:<br>• Name = Nicole M. Street<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $-0-<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $-0-<br>• Total claim amount –<br>$-0- | N | Impaired, Claims in this class are entitled to vote on the plan. | Treatment under the Plan is that this Class will be only entitled to payments equal to the support payments approved by the Los Angeles Superior Court. |
| 5b | Unsecured claim of:<br>• Name = Brandmeyer, Stanton & Dockstader<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $20,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $-0-<br>• Total claim amount –<br>$20,000 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. | Treatment under the Plan is that this Class will be only entitled to payments equal to $10,000 payable during the Term, 5 Years after the Effective Date, in equal installments beginning on the first day of the first month one year after the Effective Date and continuing on the first of each consecutive month thereafter over a period of 48 months, or $208.33 per month. |

26

27

28

26

| 5c | Unsecured claim of:<br>• Name = Law Offices of Martha Iturrioz<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $10,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $-0-<br>• Total claim amount –<br><br>$10,000 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. | Treatment under the Plan is that this Class will be only entitled to payments equal to $2,000 payable during the Term, 5 Years after the Effective Date, in equal installments beginning on the first day of the first month one year after the Effective Date and continuing on the first of each consecutive month thereafter over a period of 48 months, or $41.67 per month. |

Classes 5a-5c consists of the Allowed Claims of the General Unsecured Creditors that relate to the Divorce action.  Classes 5a-5c are impaired under the Plan.  In full and complete satisfaction of the Classes 5a-5c Claims, the Claimants under this class will be entitled to receive payments as follows:

¤ Debtor will continue paying the support obligation of Nicole M. Street in the amount of $4,174 per month, one-half due on the 15th and one-half due on the 30th of each month, through the Term.

¤ Debtor will settle and compromise the amounts claimed by Brandmeyer, Stanton & Dockstadler, a law firm that has represented Nicole M. Street in the Divorce, as follows: payments equal to $10,000 payable during the Term, 5 Years after the Effective Date, in equal installments beginning on the first day of the first month one year after the Effective Date and continuing on the first of each consecutive month thereafter over a period of 48 months, or $208.33 per month.

¤ Debtor will settle and compromise the amounts claimed by the Law Offices of Martha Iturrioz, a law firm that has represented Nicole M. Street in the Divorce, as follows: payments equal to $2,000 payable during the Term, 5 Years after the Effective Date, in equal installments beginning on the first day of the first month one year after the Effective Date and continuing on the first of each consecutive month thereafter over a period of 48 months, or $41.67 per month.

Nothing in the Plan shall enhance or otherwise increase the rights of the holders of the Class 5 claims to seek recovery on their claims as against any party other than the Reorganized Debtor.

### 3. Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  There are one Class in this group including credit card debt holders, general obligations of Debtor, claims by unsecured holders of personal guaranties signed by Debtor, pre-petition promissory notes and all other unsecured claims (named herein the Class 6a-6l Claimants), including without limitation, unsecured consultants, contractors and service providers of Debtor.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6a | Unsecured claim of:<br>• Name = Bank of America (111/Camino Real claim)<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $14,500,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$14,500,000.00 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. | Treatment under the Plan is that this Class will be entitled ony to participation equal to a pro rata payment of the Distribution over the Term. |
| 6b. | Unsecured claim of:<br>• Name = Bank of America (Slender Lady claim)<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $40,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$40,000.00 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. | |
| 6c. | Unsecured claim of:<br>• Name = California Bank & Trust (BVN Homes, Inc.)<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $4,500,000.00<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$4,500,000.00 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. | |

| | | | |
|---|---|---|---|
| 6d | Unsecured claim of:<br>• Name = California Bank & Trust (Tahiti Partners Real Estate Development Corp)<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $1,000,000.00<br>• Post-pet. Amount Interest Due = -0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount --<br><br>$1,000,000.00 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. |
| 6e | Unsecured claim of:<br>• Name = Chase Visa<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $28,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$28,000 | N | Impaired, Claims in this class are entitled to vote on the plan. |
| 6f | Unsecured claim of:<br>• Name = First Bank (Mandarina Estates, LP)<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $8,500,000.00<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$8,500,000.00 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. |
| 6g | Unsecured claim of:<br>• Name = Hardrock Tile and Marble Inc.<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $48,370<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$48,370 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. |
| 6h | Unsecured claim of:<br>• Name = Home Depot<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $16,841<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$16,841 | N | Impaired, Claims in this class are entitled to vote on the plan. |

29

| | | | |
|---|---|---|---|
| 6i | Unsecured claim of:<br>• Name = Home Depot<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $17,250<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$17,250 | N | Impaired, Claims in this class are entitled to vote on the plan. |
| 6j | Unsecured claim of:<br>• Name = Home Depot<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $3,144<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$3,144 | N | Impaired, Claims in this class are entitled to vote on the plan. |
| 6k | Unsecured claim of:<br>• Name = Striker Construction<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $27,362<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$27,362 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. |
| 6l | Unsecured claim of:<br>• Name = Tahiti Partners Real Estate Development Corp<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $197,548<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$197,548 | Y | Impaired, Claims in this class are entitled to vote on the plan. |
| 6m | Unsecured claim of:<br>• Name = J&L Electrical Services, Inc.<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $8,645<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$8,645 | N | Impaired, Claims in this class are entitled to vote on the plan. |

| | | | | |
|---|---|---|---|---|
| 6n | Unsecured claim of:<br>• Name = Rochelle's HCCA LLC dba Home Cleaning Centers<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $376<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$376 | N | Impaired, Claims in this class are entitled to vote on the plan. | |

Classes 6a-6l consists of the Allowed Claims of the General Unsecured Creditors that hold promissory notes, personal guaranties and other debts.  Classes 6a-6l are impaired under the Plan.  In full and complete satisfaction of the Classes 6a-6l Claims, the Claimants under this class will be entitled to receive a pro rata payment of the Distribution, the amount of $103,500, which shall be paid in equal monthly installments over the Term including interest at the rate of five percent (5%) per annum.

Nothing in the Plan shall enhance or otherwise increase the rights of the holders of the Class 6 claims to seek recovery on their claims as against any party other than the Reorganized Debtor.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 7a | Unsecured claim of:<br>• Name = BVN Homes, Inc.<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $20,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$20,000.00 | N | Impaired, Claims in this class are entitled to vote on the plan. | Treatment under the Plan is that this Class will be entitled ony to participation equal to a pro rata payment of the Distribution over the Term. |
| 7b. | Unsecured claim of:<br>• Name =CGJP, LLC<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $50,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$50,000.00 | N | Impaired, Claims in this class are entitled to vote on the plan. | |

31

| | | | | |
|---|---|---|---|---|
| 7c. | Unsecured claim of:<br>• Name = GSP Partners, LLC<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $30,000.00<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$30,000.00 | N | Impaired, Claims in this class are entitled to vote on the plan. | |
| 7d | Unsecured claim of:<br>• Name = Nobel Creek Meadows<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $73,333<br>• Post-pet. Amount Interest Due = -0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$73,333 | N | Impaired, Claims in this class are entitled to vote on the plan. | |
| 7e | Unsecured claim of:<br>• Name = A&C Ventures<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $10,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$10,000 | N | Impaired, Claims in this class are entitled to vote on the plan. | |
| 7f | Unsecured claim of:<br>• Name = Tahiti Partners I, LLC<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $16,750<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$16,750.00 | N | Impaired, Claims in this class are entitled to vote on the plan. | |
| 7g | Unsecured claim of:<br>• Name = Matthew Drive Place, LLC<br>• Collateral Description = None<br>• Pre-pet. Amount Due = $40,000<br>• Post-pet. Amount Interest Due = $-0-<br>• Pre-pet. penalties amount= $Unknown<br>• Total claim amount –<br><br>$40,000 | N (Disputed) | Impaired, Claims in this class are entitled to vote on the plan. | |

Classes 7a-7g consists of the Allowed Claims of the General Unsecured

Creditors that hold promissory notes, personal guaranties and other debts.  Classes 7a-

7g are impaired under the Plan.  In full and complete satisfaction of the Classes 7a-7g

Claims, the Claimants under this class will be entitled to receive a pro rata payment of

32

1  the Distribution, in the amount of $5,000 payable on each consecutive anniversary of

2  the Effective Date through the Term, which shall be paid in equal installments over the

3  Term.

4      Nothing in the Plan shall enhance or otherwise increase the rights of the holders

5  of the Class 7 claims to seek recovery on their claims as against any party other than

6  the Reorganized Debtor.

7  ### 4. General Unsecured Claims:[4] Classes of Interest Holders

8      Interest holders are the parties who hold ownership interest (i.e., equity interest)

9  in Debtor.  If Debtor is a corporation, entities holding preferred or common stock in

10  Debtor are the interest holders.  If Debtor is a partnership, the interest holders include

11  both general and limited partners.  If Debtor is an individual, Debtor is the interest

12  holder.  The following chart identifies the Plan's treatment of the class of interest

13  holders.  These Interests will be eliminated under the Plan.  There are no interest

14  holders or insiders.

15      Notwithstanding any other provision of the Plan, no payments or Distributions

16  shall be made on account of any Disputed Claim or Disputed Interest until such Claim or

17  Interest becomes an Allowed Claim or Allowed Interest, and then only to the extent it

18  becomes an Allowed Claim or Allowed Interest.  Any Proof of Claim or Proof of Interest

19  filed that differs from the Scheduled amount is deemed to be a Disputed Claim or

20  Disputed Interest.

21  **D. Means of Effectuating the Plan**

22      **1. Resolution of State Court Actions**

23      There are three pending actions against Debtor/Debtor in Possession and in two

24  of them (California Bank & Trust v. TP Builders and Geoffrey S. Payne; Geoffrey S.

25  Payne v. California Bank & Trust), LASC Case No. BC421007, and First Bank v.

26  Geoffrey S. Payne; Geoffrey S. Payne v. First Bank, LASC Case No. NC052482, he has

27  brought cross actions.   In the third action, Bank of America v. Geoffrey S. Payne,

28  ---

[4]  Debtor reserves its right to object to any of the Claims filed by the following Creditors on any reasonable grounds.

1    Riverside County Superior Court Case No. INC089532, no answer or cross-complaint

2    has been filed.  Debtor reserves the right to move forward with the cross-actions and to

3    file a cross-action in the third matter.  Debtor disputes that any action remains against

4    him in the first two matters because, among other things, the respective banks

5    foreclosed non-judicially against the subject properties in those matters and the

6    uncertainty of the effect of the One Form of Action Rule barring the banks from

7    continuing with their actions against Debtor.

8         Recently, and since the Petition was filed in this Case, a creditor named under

9    this Case, Striker Construction, filed and served on Debtor a lawsuit in the Los Angeles

10   Superior Court for the claims Striker has submitted under this Case.   The lawsuit

11   attempts to avoid the stay in this Case by Striker suing Debtor in his capacity as the

12   trustee of his revocable family trust, which for purposes of this Case is disregarded.

13   Further, the family trust did not sign the contracts with Striker, which contracts pertain to

14   the Home.  Third, Debtor has substantial defenses and counter-claims to the lawsuit.  If

15   the lawsuit is not dismissed, Debtor will file a notice of this Case in that lawsuit.

16        **2. <u>Funding for the Plan</u>**

17        •    Debtor will fund the Plan through earned income from salaries from

18   his law practice and from real estate development and services.  Debtor also anticipates

19   earning income from real estate opportunities.   Debtor's monthly expenses are

20   anticipated to be as follows:

| Item | Amount | Total | Class |
|------|--------|-------|-------|
| Living Expenses | | | |
| Food | 400 | | |
| Automobile | 300 | | |
| Insurance (Health) | 200 | | |
| Medicine | 140 | | |
| Insurance (Life) | 250 | | |
| Insurance (Auto) | 400 | | |

| | | | |
|---|---|---|---|
| Daughter Support | 1,000 | | |
| Entertainment/Gift | 400 | | |
| Misc. | 400 | | |
| Subtotal Living Exp | | $3,490 | |
| Home Taxes | 3,100 | | |
| Texas Taxes | 320 | | |
| First Loan (Home) | 10,100 | | Class 2 |
| Second Loan (Home) [1] | 2,917 | | Class 3 |
| First Loan Texas | 1,094 | | Class 4 |
| Nicole Street | 4,127 | | Class 5a |
| Nicole Street Attys | 250 | | Classes 5b & 5c |
| Distribution | 1,953 | [2][3] | Class 6 |
| Distribution | 387 | | Class 7 |
| Subtotal Plan Exp | | $24,248 | |
| Total Monthly Exps | | **$27,738** | [4] |

[1] Starts after end of first full year following the Effective Date

[2] Number based on the calculation of equity, below, and the Distribution payable over the period of the Term bearing interest at the rate of 5% per annum, to the Unsecured, Non-Priority Creditors.  The Home and the Texas Property will be considered to have equity determined as follows, which equity will be deemed to be payable as the Distribution:

[3] This number is based on the Distribution amortized over five (5) years, the Term, and bearing five percent (5%) interest per annum.

[4] Amount does not include income taxes.

| | Home | Texas Property | Net Total |
|---|---|---|---|
| Value[1] | $3,100,000 | $275,000 | |

35

| | | | |
|---|---|---|---|
| Homestead Exemption | 75,000 | | |
| Trustee's Fees[2] | 116,250 | 17,000 | |
| Selling Costs[3] | 186,000 | 30,250 | |
| Accrued But Unpaid Taxes[4] | 20,000 | 2,000 | |
| First Priority Loan | 1,950,000 | 175,000 | |
| Second Priority Loan[5] | 700,000 | -0- | |
| **Totals** | **$52,750** | **$50,750** | **$103,500** |

[1] Estimates based on appraisal of home and on Debtor's experienced opinions of value.

[2] Based on the calculations under 11 U.S.C. § 32.

[3] For the Home, the selling costs including, among other things, commissions, escrow and title are estimated at 6%; and for the Texas Property, the selling costs are estimated at 11%.

[4] Taxes are estimated at about 50% of the annual taxes covering a six month period.

[5] The amount due under the second priority loan secured by the Home is disputed; this amount is the proposed compromise amount.

• The Unsecured, Non-Priority Creditors will share the collective Net Total amounts on a pro rata basis payable in equal monthly payments over a five (5) year period. Debtor may, in his sole discretion, pay the Unsecured, Non-Priority Creditors in one lump sum at any time before the end of the five (5) year period without penalty.

E. **Post-confirmation Management**

The Reorganized Debtor will retain possession of his properties (including without limitation the Home and the Texas Property) and the management of his

1    financial affairs after the confirmation of the Plan and may use, in his discretion, other

2    consultants and as the case may be.  Such consultants shall be paid market rate fees

3    and shall be reimbursed their reasonable costs to manage the Estate through the Plan

4    Period.

5    **F. Disbursing Agent**

6          The Reorganized Debtor shall act as the Disbursing Agent for the purpose of

7    making all distributions provided for under the Plan.  The Disbursing Agent shall serve

8    without bond.

9          In his capacity as Disbursing Agent, the Reorganized Debtor shall be responsible

10   for all actions necessary to maintain and maximize the Reorganized Debtor's business

11   affairs.  The Disbursing Agent shall be responsible for the operation of the Reorganized

12   Debtor's business, preservation of assets, and pursuit of any claims held by Debtor's

13   bankruptcy estate, including any Avoidance Actions and Post-Confirmation Estate

14   Claims, and for the Distribution of Debtor's Cash or any recoveries to Creditors pursuant

15   to the provisions of the Bankruptcy Code and the Plan.  The duties of the Disbursing

16   Agent shall also include preparing and filing the post-confirmation status reports with the

17   Office of the United States Trustee and paying all post-confirmation quarterly fees of the

18   Office of the United States Trustee until the bankruptcy case is dismissed or a final

19   decree has been entered, whichever occurs first.

20   **G. Employment and Compensation of Professionals**

21         Debtor anticipates that professionals will be employed to assist with its duties

22   under this Plan including the professionals that were employed by Debtor pursuant to

23   Court order during the Case.  In carrying out its duties under the Plan, the Reorganized

24   Debtor as the Disbursing Agent shall use the services of its professionals employed

25   pursuant to order of the Bankruptcy Court before confirmation of the Plan.    The

26   continued employment of such professionals will save the fees and costs associated

27   with counsel not already familiar with the matters that the professionals will undertake.

28   Since  their  involvement  in  Debtor's  Case,  the  professionals  have  conducted

1    investigations and obtained special knowledge that will assist the Disbursing Agent in

2    carrying out the provisions of the Plan and assist with the winding up of the Case

3    including claims objections.

4         Except as set forth herein to the contrary, any professional employed by the

5    Disbursing Agent in this Case after the confirmation of the Plan seeking payment of its

6    post-confirmation fees and costs will be entitled to seek payment of such fees and costs

7    without the need for any further order of the Bankruptcy Court.

8    **H. Post-Confirmation Estate Claims**

9         The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the

10   expense of the Estate), any and all claims for relief that constitute property of the Estate

11   including, but not limited to, any Avoidance Actions, whether or not such claims for relief

12   are the subject of litigation pending as of the Effective Date (collectively, the "Post-

13   Confirmation Estate Claims"), shall be vested solely in the Reorganized Debtor as of the

14   Effective Date.  From and after the Effective Date, the Reorganized Debtor shall have

15   the sole right to enforce, file, prosecute, collect, assign or settle any Post-Confirmation

16   Estate Claims.

17        Any litigation based upon Post-Confirmation Estate Claims will be filed no later

18   than one (1) year after the Effective Date, or within any applicable limitations period, or

19   within such additional period of time as the Bankruptcy Court may allow upon motion of

20   the Reorganized Debtor, after such notice as the Bankruptcy Court may deem

21   appropriate.  In the event that litigation based upon any Post-Confirmation Estate Claim

22   is not timely commenced, such Post-Confirmation Estate Claim will be deemed forever

23   waived by the Estate and neither Debtor nor any other party-in-interest will have the

24   right to pursue the same; provided, however, that any such Post-Confirmation Estate

25   Claim may be utilized as a defense against or offset to any Claim or cause of action that

26   may be brought against the Estate.

27        Notwithstanding the rights of the Reorganized Debtor with respect to Post-

28   Confirmation Estate Claims, nothing in the Plan will require the Reorganized Debtor to

1  prosecute or litigate any such matters, all of which may be decided by the Reorganized

2  Debtor in its sole discretion.

3      DEBTOR HAS NOT FULLY REVIEWED WHETHER POST-CONFIRMATION

4  ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION, WHETHER OR NOT

5  THERE ARE ANY AVOIDANCE ACTIONS THAT MAY BE BROUGHT BY THE

6  REORGANIZED DEBTOR AFTER THE EFFECTIVE DATE.  THIS INVESTIGATION IS

7  ON-GOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE, AS

8  A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND

9  ARE PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT,

10 NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR POST-

11 CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET

12 FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT, A POST-

13 CONFIRMATION ESTATE CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AT

14 ANY TIME, SUBJECT TO THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN.

15 I.  Objections to Claims

16     The right to litigate, resolve, and settle objections to Claims (at the expense of

17 the Estate), whether or not the subject of litigation as of the Effective Date, will be

18 vested solely in the Reorganized Debtor as of the Effective Date.  From and after the

19 Effective Date, the Reorganized Debtor shall have the sole right to file, prosecute,

20 litigate, and settle any objections to Claims, whether or not any such objection is

21 pending as of the Effective Date.

22     Notwithstanding that the Reorganized Debtor shall have the right to file, litigate,

23 prosecute, and settle objections to Claims on behalf of the Estate, nothing contained

24 herein will be deemed to obligate the Reorganized Debtor to take any such actions, all

25 of which will be determined in the Reorganized Debtor's sole discretion.

26     DEBTOR HAS NOT FULLY REVIEWED THE CLAIMS IN THE CASE OR

27 DETERMINED WHETHER OBJECTIONS TO CLAIMS EXIST.  THIS INVESTIGATION

28 IS ONGOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE.

1    CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE

2    PURSUANT TO THE TERMS OF THE PLAN SPECIFICALLY ADVISED THAT,

3    NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR OBJECTION

4    TO CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR

5    DISCLOSURE STATEMENT, AN OBJECTION TO CLAIM MAY BE BROUGHT

6    AGAINST ANY CLAIMANT AFTER THE EFFECTIVE DATE.

7    **J. Pending Disputed General Unsecured Claims as of the Date of Distribution**

8    In the event that any objection to any General Unsecured Claim should be

9    pending as of the date on which a Distribution is owed to the holder of such General

10   Unsecured Claim, no Distribution will be made on account of such disputed General

11   Unsecured Claim until such Disputed Claim has been determined and allowed by a

12   Final Order.  In the event that a Disputed Claim is allowed by a Final Order, within five

13   (5) Business Days after such Disputed Claim is allowed by such Final Order, such

14   Allowed General Unsecured Claim will be paid to the extent of the Distributions

15   previously made on account of Allowed General Unsecured Claims in the same Class.

16   Further Distributions, if any, on account of such Allowed General Unsecured Claim will

17   be paid directly to the holder of such Allowed General Unsecured Claim, in an

18   aggregate amount not to exceed the amount of the General Unsecured Claim allowed

19   by the Final Order.

20   **K. Unclaimed Distributions**

21   Distributions to holders of Allowed Claims will be made either:   (a) at the

22   addresses set forth in the Proof of Claim filed by the Creditor; or (b) at the address set

23   forth in any written notice of address change delivered to Debtor or the Disbursing

24   Agent after the date on which any related Proof of Claim was filed; or (c) at the address

25   reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim

26   has been filed by the Creditor and neither Debtor nor the Reorganized Debtor has

27   received a written notice of a change of address.

28

1    The Disbursing Agent shall not be required to perform any investigation or inquiry

2 as to the proper address for such Creditor if the address stated in any Proof of Claim

3 filed by the Creditor, written notice of change of address filed by the Creditor, or in the

4 Schedules is incorrect.

5    Any unclaimed Distribution ("Unclaimed Distribution") provided for under the Plan

6 (which will include: (a) checks that have been returned as undeliverable without a

7 proper forwarding address; (b) checks that were not mailed or delivered because of the

8 absence of a proper address to which to mail or deliver the same; or (c) checks that

9 remain un-cashed for a period of ninety (90) days), will be retained and utilized by the

10 Reorganized Debtor.

11    Following the earlier to occur of: (a) two (2) years after a Distribution becomes

12 and Unclaimed Distribution, or (b) ninety (90) days after the making of the Final

13 Distribution under the Plan (collectively, the "Unclaimed Distribution Holding Period"),

14 such Unclaimed Distribution will become property of the Reorganized Debtor, free and

15 clear of any restrictions thereon, and the holders of Allowed Claims otherwise entitled to

16 such Unclaimed Distributions will cease to be entitled thereto and their Claims based

17 thereon will be deemed discharged, waived, and forever barred.

18 **L. Other Provisions of the Plan**

19        **1.Executory Contracts and Unexpired Leases**

20        a.        **Assumptions**

21 The following are the unexpired leases and executory contracts to be assumed as

22 obligations of the reorganized Debtor under this Plan (see Exhibit D for more detailed

23 information on unexpired leases and executor contracts to be assumed):

24    No leases shall be assumed.

25    No executory contracts shall be assumed.

26    On the Effective Date, the unexpired leases referenced above (if any) and the

27 executory contract referenced above (if any) shall be assumed as obligations of the

28 Reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an

1   Order approving the assumption of the lease and executor contract listed above.  If you

2   are a party to a lease or contract to be assumed and you object to the assumption of

3   your lease or contract, you must file and serve your objection to the Plan within the

4   deadline for objecting to the confirmation of the Plan.  See Section {I.B.3.} of this

5   document for the specific date.

6               b.      **Rejections**

7               On the Effective Date, the following executory contracts and unexpired leases

8   will be rejected:  NONE.

9               On the Confirmation Date, except for any executory contract or unexpired lease

10  specifically assumed or rejected pursuant to a prior order of the Bankruptcy Court or

11  assumed pursuant to the Plan, each executory contract or unexpired lease entered into

12  by Debtor before the Petition Date that has not previously expired or terminated

13  pursuant to its own terms will be deemed rejected pursuant to Section 365 of the

14  Bankruptcy Code.

15              The order confirming the Plan shall constitute an Order approving the rejection of

16  any leases or contracts.  If you are a party to a contract or lease to be rejected and you

17  object to the rejection of your contract or lease, you must file and serve your objection to

18  the Plan within the deadline for objecting to the confirmation of the Plan. See Section

19  I.B.3. of the Disclosure Statement for the specific date.

20              THE  BAR  DATE  FOR  FILING  A  PROOF  OF  CLAIM  BASED  ON  A  CLAIM

21  ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY (30) DAYS

22  FROM THE CONFIRMATION DATE.  Any Claim based on the rejection of a contract or

23  lease will be barred if the proof of Claim is not timely filed, unless the Court later orders

24  otherwise.

25              Proofs of Claim for any Claims arising by reason of any rejection of executory

26  contracts or unexpired leases pursuant to the Plan shall be filed and served upon the

27  Disbursing Agent and counsel for the Disbursing Agent within thirty days after the

28  Confirmation Date.  In the event that any such Proof of Claim is not filed and served as

1   set forth herein, such Claim will be deemed conclusively to be waived and will be

2   forever barred in the Case, without further notice.  Any Claim timely asserted hereunder

3   arising out of the rejection of an executory contract or unexpired lease will be deemed to

4   be a General Unsecured Claim under the Plan, but will not automatically become an

5   Allowed Claim.

6           **2. Changes In Rates Subject To Regulatory Commission Approval**

7           Debtor is not subject to governmental regulatory commission approval.  Debtor is

8   not regulated by a governmental commission.

9           **3. Retention of Jurisdiction**

10          Until this Plan has been fully consummated, the Bankruptcy Court shall retain

11  jurisdiction to the extent provided by law, including, but not limited to, the following

12  purposes:

13          1.      The classification, allowance, disallowance, or estimation of the Claim of

14  any Claimant and the re-examination of Claims that have been allowed for the purposes

15  of determining acceptance of the Plan at the time of the Confirmation Hearing and the

16  determination of such objections as may be filed to Claims.  The failure by Debtor to

17  object to or to examine any Claim for the purpose of determining acceptance of this

18  Plan shall not be deemed to be a waiver of the right of Debtor to object to or to re-

19  examine the Claim, in whole or in part, at a later date.

20          2.      The resolution of any matters, including, without limitation, the allowance

21  or disallowance of any Claim for damages by reason of the rejection of any executory

22  contract or unexpired lease, related to the assumption, assumption and assignment, or

23  rejection of any executory contract or unexpired lease to which Debtor is a party or with

24  respect to which Debtor or Reorganized Debtor may be liable, including the

25  determination of whether such contract is executory for the purposes of Section 365 of

26  the Bankruptcy Code, and to hear, determine and, if necessary, liquidate any Claims

27  arising therefrom.

28

3.    Except for as otherwise provided herein, the determination of all questions and disputes regarding title to the assets of Debtor, the Estate, or Reorganized Debtor and the determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any action pending as of the Confirmation Date, in which Debtor or the Reorganized Debtor is a party.

4.    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

5.    The resolution of any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving Debtor or the Reorganized Debtor that may be pending on the Effective Date.

6.    The modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification of this Plan even after the Plan has been substantially consummated.

7.    The enforcement and interpretation of the terms and conditions of the Plan or the Confirmation Order, and the determination of such matters, and the making of such orders consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

8.    The determination, either before or after the closing of the Case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and Debtor's, Reorganized Debtor's, or the Estate's entitlement, if any, to tax attributes that may have been property of the Estate, either before or after the closing of the Case.

9.    The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

10. The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of Debtor or the Reorganized Debtor and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

11. The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the Case.

12. The determination of the validity, extent, or priority of any liens and security interests against property of Debtor, the Reorganized Debtor, or the Estate.

13. The determination of all actions and proceedings that relate to pre-confirmation matters affecting Debtor or the Estate whether such action or proceeding is brought before or after the Effective Date.

14. The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estate.

15. The determination of all questions and disputes regarding collection of assets of Debtor or the Estate as of the Confirmation Date.

16. The entry of an order concluding and terminating the Case.

17. Such other matters to the extent provided by law.

## IV.

## EFFECT OF CONFIRMATION OF THE PLAN

**A.    Discharge**

The Plan provides that upon confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. Section 1141.   However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Reorganized Debtor**

Except as provided in Section V.E. and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the

1  Reorganized Debtor.  After the Confirmation Date, the sale of any property owned by

2  the Reorganized Debtor shall not be subject to or require Court approval.

3        Except as set forth in the Plan to the contrary, on the Effective Date, the property

4  of the Estate will vest in the Reorganized Debtor, free and clear of any community

5  property interests, Claims, liens, encumbrances, or interests of Creditors, parties-in-

6  interest, and other entities.

7        From and after the Effective Date, the Reorganized Debtor may acquire, and

8  dispose of property and settle and compromise claims without supervision by the

9  Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy

10 Rules, other than restrictions expressly imposed by the Plan, the Confirmation Order,

11 and any document, agreement, or instrument delivered in connection therewith.

12       Except as otherwise provided in the Plan or in the Confirmation Order, the rights

13 afforded in the Plan and the treatment of all Claims in the Plan will be in exchange for

14 and in complete satisfaction, discharge, and release of all Claims (including

15 Administrative Claims and any interest accrued on any Claim from and after the Petition

16 Date) against Debtor and any of its assets and properties.

17 **C.    Modification of the Plan**

18       Debtor may modify the Plan at any time before confirmation.  However, the Court

19 may require a new disclosure statement and/or re-voting on the Plan.

20       Debtor may also seek to modify the Plan at any time after confirmation only if (1)

21 the Plan has not been substantially consummated _and_ (2) the Bankruptcy Court

22 authorizes the proposed modifications after notice and a hearing.

23       If the Bankruptcy Court determines that a post-confirmation modification of the

24 Plan is in the best interest of the Estate and the Creditors, even after substantial

25 consummation of the Plan, then, notwithstanding the provisions of Section 1127(b) of

26 the Bankruptcy Code, the Bankruptcy Court may authorize such modification of the

27 Plan, after notice and a hearing, in such manner and under such conditions, as the

28 Bankruptcy Court deems appropriate.

1   **D.**     **Post-Confirmation Status Reports**

2       Within 120 days of the entry of the order confirming the Plan, Debtor shall file a

3 status report with the Bankruptcy Court explaining what progress has been made

4 toward consummation of the confirmed Plan.  The status report shall be served on the

5 United States Trustee, the twenty largest unsecured Creditors, and those parties who

6 have requested special notice.  Further status reports shall be filed every 120 days and

7 served on the same entities.

8   **E.**     **Post-Confirmation Conversion/Dismissal**

9       A Creditor or party in interest may bring a motion to convert or dismiss the case

10 under Section 1112(b), after the Plan is confirmed, if there is a default in performing the

11 Plan.  If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is

12 confirmed, then all property that had been property of the Chapter 11 estate, and that

13 has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The

14 automatic stay will be reimposed upon the revested property, but only to the extent that

15 relief from stay was not previously authorized by the Court during this case.

16       The order confirming the Plan may also be revoked under very limited

17 circumstances.  The Court may revoke the order if the order of confirmation was

18 procured by fraud and if a party in interest brings an adversary proceeding to revoke

19 confirmation within 180 days after the entry of the order of confirmation.

20

21

22

23

24

25

26

27

28

1

2  **F.**    **Final Decree**

3        Once the estate has been fully administered as referred to in Federal Rule of

4  Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Court shall

5  designate in the Plan confirmation order, shall file a motion with the Bankruptcy Court to

6  obtain a final decree to close the case.

7

8  Dated: June _6_, 2010

9

10                                         DEBTOR AND DEBTOR-IN-POSSESSION

11                                         _____
                                           Geoffrey S. Payne

12

13

14

15

16  Haberbush & Associates, LP

17

18  _____
    David R. Haberbush
    Attorneys for GEOFFREY S. PAYNE

19

20

21

22

23

24

25

26

27

28

| In re: GEOFFREY S. PAYNE | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 2:10-bk-14626-BR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 444 West Ocean Boulevard, Suite 1400, Long beach, CA

A true and correct copy of the foregoing document described  DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  June 7, 2010  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Russell Clementson    russell.clementson@usdoj.gov
- Alan A Greenberg    greenbergal@gtlaw.com, mertenst@gtlaw.com
- David R Haberbush    dhaberbush@lbinsolvency.com
- Grant C Keary    gck@dlklaw.com
- Nathan A Schultz    schultzn@gtlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On  June 7, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

United States Trustee Office
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017-5524

BARRY RUSSELL, JUDGE
United States Bankruptcy Court
255 E. Temple Street, Ctrm. 1660
Los Angeles, CA 90017

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 7, 2010 | Monique  Talamante | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                      **F 9013-3.1**